JENNIE C. MOORE V. SEBASTIAN FIEG ET AL.

1. MEANING OF THE PHRASE, "or the USE THEREOF" AS USED IN A WILL.
   Where the testator in his will gives to his son all his real estate, "or the use thereof as hereinafter pointed out," *Held*, that the words, "or the use thereof," means, "or *else* the use thereof," rather than, "or *rather* the use thereof."

2. WORD "HEIRS" BEING USED IN THE SENSE OF "ISSUE," EFFECT.
   Where the testator in his will, provides that "if my son John shall have an heir of his own body, then all title * * * shall vest in *him*." *Held*, that the word "*him*" refers to "'John" and not to the "*heir*." The word "heir" being used in the sense of "issue."

3. MEANING OF WORD ESTATE.
   The word "estate" is construed to mean "property" than "interest."

ERROR to the Court of Common Pleas of Cuyahoga county.

MARVIN, J.

There are three cases brought here by Jennie C. Moore, each upon a petition-in-error to the court of common pleas. There are different defendants in each case, but each rests upon the same facts and propositions of law. In each case the petition is an ordinary petition in ejectment. The defendants in each are in possession of and claim to own certain lands. The plaintiff claims ownership of the same lands.

The plaintiff is the only child ever born to John Kneale, Junior. John Kneale, Jr., is now dead. He was the son of John Kneale, Senior, who died in December, 1860, leaving a last will and testament which was duly admitted to probate. At the time of the execution of this will John Kneale, Jr., was unmarried. The will is in the following words:

## "WILL OF JOHN KNEALE.

"In the name of God amen. I, John Kneale, being weak in body but strong in mind and memory, do make and declare this my last will and testament.

"1. I will my body to the dust and my soul to God.

"2. I give and bequeath to my son, John Kneale, all my personal property, and also all my real estate, or the use thereof as hereinafter pointed out, subject however to the life interest of my wife Eleanor. and the payment of all my just debts.

"As a condition in the above bequest, my son John is hereby required to pay to my other sons Thomas and James within one year from my decease, each the sum of one hundred dollars. A further condition is that said John shall pay to the children of my two deceased daughters Ann and Betsy each the sum of fifty dollars, to be paid to them as they severally arrive at majority.

"Said John is further required to pay to Jane, daughter of my brother Daniel Kneale, of the Isle of Man, the sum of fifty dollars on demand, in case she, the said Jane, should be living.

"Said John is further required to pay within four years from my decease the sum of twenty dollars for the support of foreign missions, and paid to the preacher in charge of the Newburgh Circuit.

"Now if my said son John shall have an heir of his own body, then all title and interest in and to my real estate with power to sell and convey shall vest in him. But if said John should die leaving no heir of his own body, then said estate shall pass to my son Thomas subject to the same requirements, restrictions and limitations pertaining to John. And in case Thomas should die leaving no heir of his own body, then it is my will that my said real estate pass absolutely to my son James and his heirs forever, with power to sell and convey. But in no case shall John or Thomas sell or dispose of said estate, unless they shall have an heir of their own bodies.

"Lastly I give and bequeath to my wife Eleanor Kneale in addition her life interest in my estate, the exclusive use of the two north rooms in my dwelling house, one bed room in the chamber, and a proportionate use of the cellar and well.

"In witness whereof I hereunto set my hand at Warrensville, in the county of Cuyahoga and state of Ohio this tenth day of September, A. D., 1855.

John Kneale.

"Signed and declared by the above named John Kneale to be his last will and testament in presence of us, who at his request have signed as witnesses to the same.

"Truman G. Kent.
"Luther R. Prentiss."

The result of the trials of these several cases in the court of common pleas was a judgment in each case for the defendants. To determine whether or not these several judgments are right necessitates a construction of this will because the plaintiff, having outlived her father and being the only child ever born to him as already stated, if the construction claimed by the plaintiff is correct, the judgment in each case should have been in her favor; while if the construction be given to the will which is insisted upon by the defendants, the judgments are right.

The defendants in each case are in possession of certain real estate which was owned by John Kneale, Sr., at the time of his death, and they claim ownership by conveyances made to them directly or through intermediate conveyances from John Kneale, Jr. Each of the conveyances under which the defendants claim, was made after the birth of the plaintiff.

It is said on the part of the plaintiff, that John Kneale, Jr., took only a life estate in the real estate left by his father; and this is claimed, first, because of the language of the second item of the will, the first clause of which reads: "I give and bequeath to my son John Kneale all my personal property, and also all my real estate or the use thereof as hereinafter pointed out, subject, however, to the life interest of my wife Eleanor and the payment of all my just debts."

On behalf of the plaintiff it is urged that the words "or the use thereof as hereinafter pointed out," are equivalent to the words "or rather the use thereof as hereinafter pointed out." We think, taking into consideration the entire will, a no more unwarranted construction of these words than that claimed by the plaintiff, is to say they are equivalent to "or else the use thereof as hereinafter pointed out."

A further clause in item two reads, "Now if my said son John shall have an heir of his own body, then all title and interest in and to my real estate with power to sell and convey shall vest in him." On the part of the plaintiff it is urged that these words are equivalent to "Now if my said son John shall have an heir of his own body, then all title and interest in and to my real estate with power to sell and convey shall vest in such heir;" while on the part of the defendants it is said that the words are equivalent to "Now if my said son John shall have an heir of his own body, then all title and interest in and to my real estate with power to sell and convey shall vest in said John." If the word "heir" as used in this clause, is used in its technical sense of "one who inherits from another," the plaintiff's construction would seem reasonable, but we all know that this word "heir" is often used in common parlance as meaning "child." It is very common to say that one has an "heir" born to him, meaning only that a child has been born to him.

The language of this will as a whole, evidences that the draftsman was not an educated man likely to discriminate carefully as to the meaning of words, and may, if such becomes necessary for a true construction of this will, be fairly presumed to have used this word "heir" in its more common signification and to have meant by the words "heir of his

own body" "issue of his own body." If this be the true construction, then, upon the birth of issue of his body, John became the owner in fee of this property, or else he ceased to have any estate in it whatever, because, upon the birth of the heir, "all title and interest in and to my real estate with power to sell and convey shall vest in him," and if "him" means "issue of his body," then the child at birth became the owner of this property absolutely and might, upon arriving at full age, convey the same without any interference on/the part of the father, and, indeed, it might be sold, under proper proceedings by the guardian of such child, during the child's infancy, and John would have had no right to interfere. If, however, the antecedent of the word "him" be John, then upon the birth of the child, John might convey, as he did, and the title made by him would be perfect.

This latter construction is, as we think, strengthened by other parts of the will. John is required to pay, as will be seen by the reading of the will, a considerable sum of money to other persons as a condition upon which he shall hold whatever estate is granted to him in the will.

One of the provisions of the will is in these words: "But if said John should die leaving no heir of his own body, then said estate shall pass to my son Thomas subject to the same requirements, restrictions and limitations, pertaining to John. Here it will be observed that the words "leaving no heir of his own body" are used, while in the clause before quoted the words are "have an heir of his own body;" and it is urged on the part of the plaintiff, that if the construction claimed by the defendants be given to the will, a state of facts might have arisen which would make this last-quoted clause entirely nugatory because John might have issue of his body born, and still die leaving no issue. And it is said, if this state of facts had existed at the time of John's death and John had before that time and after the birth of his child conveyed the property away, Thomas would have been left without any interest in the estate, whereas the testator has expressly given to him this property in the event that John should die leaving no "heir of his body." It is manifest that this difficulty exists if the construction claimed by the defendants be given to this will. But we are inclined to the opinion that less difficulty results from giving the construction to the will, claimed by the defendants, than in giving it the construction claimed by the plaintiff. We are strengthened in this view, by the following clause in the will: "But in no case shall John or Thomas sell or dispose of said estate unless they shall have an heir of their own bodies." Clearly the words, "heir of their own bodies," are here used in the sense of "issue of their own bodies," because if the word "heir" is used in its technical sense, neither John nor Thomas could have sold at all for neither could leave an heir of his own body until after his death.

On behalf of the plaintiff it is urged that the word "estate" is used in its technical sense of "interest;" but, even if that be true, the difficulty, just suggested, would still exist. Such interest could not be sold until the parent had died leaving an "heir," as he could have no "heir," in the technical sense, until death. But the word "estate" in common parlance is used to mean "property," and we think was so used in this clause of the will. So that the provision is that neither John nor Thomas should sell this property unless the one, so undertaking to sell, should have issue of his body and, in the event of his having issue of his body, we think the implication is plain and should be considered in determining the true construction to be given to this will.

It is manifest that the testator supposed that but for this provision, some disposition of the property might be made by John or Thomas and he undertook to say that such disposition should not be made except upon the happening of a certain contingency, and it seems fair to say that upon the happening of such contingency he intended that the property might be sold.

It is not without some misgivings that we come to the conclusion to which we do in these cases, because whatever construction be given to the will, as already pointed out, might result in difficulties which we think were not foreseen by the testator. But, on the whole, we are of the opinion and hold that the construction to be given to the will is that contended for by the defendants. That the judgment of the court of common pleas in each case was right, and such judgments are affirmed.

Wm. Howell and Geo. L. Phillips, for plaintiff in error.

Hessemmueller & Bemis for defendants in error.